UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

TIMOTHY JAY MILLER,

                Petitioner,                    Case No. 1:15-cv-1124

v.                                       Honorable Paul L. Maloney

SHANE JACKSON,

                Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Timothy Jay Miller is incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. On April 29, 2013, a Kent County Circuit Court jury, after a five-day trial and about an hour of deliberation, convicted Petitioner of first-degree murder, MICH. COMP. LAWS § 750.316(1)(b), and armed robbery, MICH. COMP. LAWS § 750.529. On June 6, 2013, the court sentenced Petitioner to life imprisonment without the possibility of parole on the murder conviction concurrent to a term of 23 years, 9 months to 71 years, 3 months on the armed robbery conviction.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed the trial court by unpublished opinion dated February 4, 2014. *People v. Miller*, No. 317187, 2015 WL 558001 (Mich. Ct. App. Feb. 10, 2015).

Petitioner applied for leave to appeal to the Michigan Supreme Court.  On July 28,

2015, that court denied leave.  *People v. Miller*, 866 N.W.2d 455 (Mich. 2015).

Petitioner did not file a petition for certiorari in the United States Supreme Court.

On October 26, 2015, Petitioner filed his petition for writ of habeas corpus in this

Court raising two issues:

> I.   [PETITIONER] IS ENTITLED TO A NEW TRIAL WHERE THE
>      TRIAL COURT DECLINED TO INSTRUCT THE JURY AS
>      REQUESTED BY THE DEFENSE WHERE THERE WAS
>      EVIDENCE TO SUPPORT SUCH INSTRUCTIONS.
>
> II.  [PETITIONER] IS ENTITLED TO A NEW TRIAL WHERE
>      THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE
>      FELONY MURDER CONVICTION.  ALTERNATIVELY, THE
>      MOTION FOR DIRECTED VERDICT SHOULD HAVE BEEN
>      GRANTED.

(Pet., ECF No. 1, PageID.3.)  On May 17, 2016, Respondent filed an answer to the

petition,  (ECF No. 6.), along with the state-court record, pursuant to Rule 5, Rules

Governing § 2254 Cases, (ECF No. 7).[1]  Respondent contends that Petitioner's habeas

claims have no merit.  Upon review and applying the standards required by the

Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT.

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

October 24, 2012 Preliminary Examination Transcript(Prelim. Exam. Tr., ECF No. 7-4, PageID.__)
April 13, 2013 Pretrial Hearing Transcript                    (Pretrial Hr'g Tr., ECF No. 7-5, PageID.__)
April 22, 2013 Trial Transcript (Volume 1)                    (Trial Tr. I,  ECF No. 7-6, PageID.__)
April 23, 2013 Trial Transcript  (Volume 2)                   (Trial Tr. II, ECF No. 7-7, PageID.__)
April 24, 2013 Trial Transcript  (Volume 3)                   (Trial Tr. III, ECF No. 7-8, PageID.__)
April 25, 2013 Trial Transcript  (Volume 4)                   (Trial Tr. IV, ECF No. 7-9, PageID.__)
April 29, 2013 Trial Transcript  (Volume 5)                   (Trial Tr. V, ECF No. 7-10, PageID.__)
June 6, 2013 Sentencing Transcript                            (Sentencing Tr., ECF No. 7-11, PageID.__).

1214 (AEDPA), I find that Petitioner's claims are without merit.  Accordingly, I

recommend that the petition be denied.

## Factual background

The Michigan Court of Appeals offered this synopsis of the facts underlying

Petitioner's criminal prosecution:

> On September 25, 2012, Amy Boyd called the police because she was concerned that her coworker, Santiago Zapata, had not come in to work for several days.  Grand Rapids Police Officer Glen Brower found Zapata dead in the basement of his home of multiple stab wounds.

> Zapata had coached [Petitioner's] basketball team and Mary Aalsburg, Zapata's next door neighbor, testified that Zapata occasionally allowed [Petitioner] to sleep at his house.  Aalsburg testified that she and Zapata briefly exchanged words at around 7:45 p.m. on September 20, 2012, and that she did not see Zapata again after that.

> Amon Willis, an acquaintance of [Petitioner] and codefendant Maceo Scott, testified that [Petitioner] asked him for a ride at around midnight on September 20, 2012.  According to Willis, [Petitioner] was wearing a bloody shirt and said, "I did something wrong, I got to get out." [Petitioner] threw the bloody shirt in a parked car and went to the apartment of Scott's girlfriend.

> Officers arrested [Petitioner] and Scott on October 2, 2012.  David Hayhurst, a Michigan State Police forensic scientist, testified that blood samples on the bottom of Scott's shoes tested positive for Zapata's DNA.  Scott's shoes also matched bloody footprints that investigators found in the basement of Zapata's home.

> Grand Rapids Police Detective Timothy Devries interviewed [Petitioner] after his arrest.  During his interviews, [Petitioner] admitted that he and Scott were together on September 20, 2012.  According to [Petitioner], they intended to rob someone. Scott asked to scare Zapata, showed [Petitioner] a knife, and stated that he would make Zapata give him money.  Scott went into Zapata's home alone because Zapata would not recognize Scott.  [Petitioner] went in some time later and did not see Zapata.  Scott told him that Zapata was downstairs and he was okay.

[Petitioner] and Scott then took the keys to Zapata's car, drove to an ATM, and attempted to use Zapata's ATM card.

[Petitioner] stated that he was not involved in the killing and did not want Zapata to die. James Caldwell testified that when he called [Petitioner] to inform him of Zapata's death, [Petitioner] seemed genuinely surprised by the news. According to Caldwell, [Petitioner] said that he was a couple of blocks from the house when the murder took place. [Petitioner] also told Caldwell that he and Scott received $800 from the robbery.

*Miller*, 2015 WL 558001 at *1 (footnote omitted).

The crux of Petitioner's defense was that no matter what his role might have been in planning the robbery with Maceo Scott, Petitioner abandoned the plan before it was consummated. The only evidence regarding the role that Petitioner played in the events at Santiago Zapata's house on September 20, 2012, are his own words as spoken to the detectives interviewing him or his friend James Caldwell.[2] Essentially, Petitioner claims that, once Maceo Scott went into the house, Petitioner abandoned the plan and walked some distance away. Eventually he returned, but at that point the robbery had been completed and, Petitioner contends, Scott told him that Zapata was "okay." So, Petitioner left with Scott.[3]

---

[2]Redacted records of Detective Tim Devries's interviews with Petitioner were played for the jury. The recordings are not part of the trial transcripts supplied by Respondent. Nonetheless, the content of the interviews is part of the record by virtue of the transcript of the preliminary examination. In that proceeding, Detective Tim Devries testified at length regarding his interviews of Petitioner and Maceo Scott. (Prelim. Exam., ECF No. 7-4, PageID.36-52.)

[3]Maceo Scott's version of the events was quite different:

Grand Rapids Police Detective Leslie Smith interviewed Scott after his arrest. During one of the interviews, Scott told Detective Smith that he

Based on Petitioner's statements regarding that night, the prosecutor argued that Petitioner served as a look-out outside the house while Maceo Scott effected the robbery. Based on the same evidence, Petitioner contends he had left and was blocks away when the crime occurred. Essentially, Petitioner acknowledges some participation before the robbery and some participation after the robbery, but disclaims any connection between himself and the robbery or stabbing.

## Discussion

I.    AEDPA standard

This action is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an

---

and [Petitioner] went to Zapata's house because [Petitioner] knew that Zapata had money and [Petitioner] promised to give Scott some of it. Scott waited outside while [Petitioner] went into the house, but Scott later went into the house to help [Petitioner] move Zapata into the basement, where [Petitioner] stabbed Zapata several times.

*People v. Scott*, No. 317209, 2015 WL 558011 at *1 (Mich. Ct. App., Feb. 10, 2015). Scott's version of the events, however, was not before the jury at Petitioner's trial. Scott was also convicted of first-degree murder and armed robbery in a separate trial. *Id.*

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529

U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at \*3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago,* 888 F.2d 399, 407 n.4 (6th Cir. 1989).

II.   Whether Petitioner was denied due process when the trial court refused to instruct the jury regarding abandonment and accessory after the fact.

On the morning of the fifth day of trial, the court heard argument regarding jury instructions.   Petitioner's counsel had proposed that the court read standard instructions regarding abandonment and accessory after the fact.  The court rejected counsel's proposal:

With regard to criminal jury instruction 9.4, abandonment is a defense to attempt.  The issue is whether the abandonment instruction can be given where the crime has morphed from an attempt to a completed crime.  In the opinion of the Court, the only instance where this instruction is appropriate after the crime is complete occurs in multiple defendant situations.   In situations involving multiple defendants . . . an instruction on abandonment should be given as a defense to aiding and abetting.

\*      \*      \*

The instruction in my opinion is designed specifically as a defense to an attempt.  Subsequent appellate authority supports this position as cited by the prosecution in their brief.

With regard to Section 8.6, accessory after the fact, the law is clear and plain, the offense of accessory after the fact is not a cognate lesser offense of murder. . . . So, 8.6 is not being given.  The distinction between aider and abettor and accessory after the fact [Section 8.7] is moot.

(Trial Tr. V, ECF No. 7-10, PageID.367.)  The Michigan Court of Appeals concluded

that the trial court had correctly denied Petitioner's proposal:

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v. Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).  Generally, the trial court must grant a defendant's request for an instruction on a theory or defense if the evidence supports it. [*People v. McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003)]. But the defendant is required to produce some evidence on all elements of a defense before the trial court must instruct the jury on it.  *People v. Guajardo*, 300 Mich App 26, 34–35; 832 NW2d 409 (2013).   And a defendant is only entitled to an instruction on an offense if the offense is a lesser included offense of the crime charged and a rational view of the evidence supports the instruction.  MCL 768.32(1); *People v. Cornell*, 466 Mich 335, 354–355; 646 NW2d 127 (2002).

On appeal, [Petitioner] wholly fails to address the basis for the trial court's decision to deny his request for specific jury instructions.  "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v. Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).   In this case, the trial court denied [Petitioner's] requested instructions because [Petitioner] did not show the

elements of an abandonment defense, which include that the crime charged is an attempt crime, and he did not show that accessory after the fact is a lesser included offense of felony murder. Rather than asserting that the trial court erred in these rulings, [Petitioner] instead contends on appeal that the facts in this case supported these instructions. [Petitioner's] arguments do not address the basis of the trial court's decision. We conclude that [Petitioner] has abandoned his assertions of error by failing to adequately address the merits of his assertion. In any case, we have reviewed the trial court's rulings and conclude that it correctly denied [Petitioner's] request for the instructions.

*Miller*, 2015 WL 558001 at *2. Petitioner presents the same instructional challenge to this Court that he presented to the Michigan Court of Appeals: the evidence at trial supported instructions on accessory after the fact and abandonment.

Not every claimed instructional error rises to the level of a constitutional violation. "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the

due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  It is also the prerogative of the state to determine what charge or charges to bring:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted).

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense.  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992)

(acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

Finally, the Due Process Clause requires providing lesser included offense instructions in <u>capital</u> cases. *Beck v. Alabama*, 447 U.S. 625 (1980). Lesser included offense instructions were also required in <u>noncapital</u> cases under the English common law and they are still required under the common law or by statute in every state and in the federal courts, if and when the evidence supports it. *Id.* at 633-634, 636 n. 11, 12.

Even though the courts of this nation are in complete accord as to the propriety of lesser included offense instructions, the Supreme Court has never held that lesser included offense instructions are required as a matter of constitutional due process in noncapital cases. *Id.* at 638 n. 14; *see also Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)(en banc) ("[The failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]"). Moreover, whether or not a particular crime is a lesser included offense of a charged crime is also a matter of state law. *Richie v. Workman*, 599 F.3d 1131, 1136 (10th Cir. 2010) ("Whether an offense is a lesser-included offense is a matter of state law."); *see also Hopkins v. Reeves*, 524 U.S. 88, 95-99 (1998) (Court looked to state law to

determine whether offenses were lesser included offenses of charged crime and noted the various tests states employed to determine whether one offense was a lesser included offense of another).  The state court's determination on the issue would be "axiomatically correct[.]" *Bagby*, 894 F.2d at 795.

The state appellate court's rulings in Petitioner's case foreclose his constitutional argument regarding the jury instructions.  Petitioner was not charged as an accessory after the fact, so such instructions were not required to permit the jury to find the elements of the charged crime.  Moreover, the trial court and the court of appeals concluded that accessory after the fact did not constitute a lesser included offense of armed robbery or felony murder, the charged crimes.  So, there was no reason to read the instruction under state law or, because the charged crimes were not capital offenses, to satisfy the requirements of due process.

Similarly, with regard to Petitioner's abandonment defense, the court of appeals concluded that abandonment was only available as a defense to an "attempt" crime. Petitioner was not charged with an "attempt" crime.  Accordingly, the defense was not available to him.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013)

(quoting *Bradshaw*, 546 U.S. at 76).  Accordingly, the state courts' determinations

regarding the elements of the crimes charged, the lesser included offenses for the

crimes charged, and the availability of defenses to the crimes charged, bind this Court;

they are "axiomatically correct" and conclusively resolve Petitioner's instructional

challenges.  *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).   Under the

circumstances, the state court determinations were neither contrary to nor an

unreasonable application of clearly established federal law.  Accordingly, Petitioner is

not entitled to habeas relief.

> III.   <u>Whether there was sufficient evidence to convict Petitioner of felony murder.</u>

Petitioner contends there was insufficient evidence of: (1) premeditation and

deliberation; (2) Petitioner's participation in the killing; and (3) a preconceived plan to

kill.  (Pet.'s Br., ECF No. 2, PageID.44-45.)  The Michigan Court of Appeals rejected

Petitioner's challenge:

> A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v. Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992).  This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her convictions. *People v. Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).  We review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could find that the prosecutor proved the crime's elements beyond a reasonable doubt. *Id.* at 196.  We apply the same standards to our review of the trial court's decision on a motion for a directed verdict. *See People v. Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

>> The elements of felony murder under an aiding and abetting theory are that the defendant (1) performed acts or gave

- 13 -

encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v. Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).]

A probable result of an armed robbery is that the victim may be killed. *See People v. Kelly*, 423 Mich 261, 277–278; 378 NW2d 365 (1985); *People v. Robinson*, 475 Mich 1, 3; 715 NW2d 44 (2006). Circumstantial evidence and reasonable inferences arising from that evidence can prove the elements of a crime, including the defendant's intent. *People v. Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In this case, [Petitioner] admitted to Detective Devries that he and Scott intended to rob Zapata and that he participated in planning the robbery. Scott showed [Petitioner] that he had a knife. Zapata died of multiple stab wounds. Willis testified that, later that evening, [Petitioner] was wearing a bloody shirt and admitted that he did something wrong. Viewing the evidence in a light most favorable to the prosecutor, a rational trier of fact could infer that [Petitioner] was aware that the robbery could result in Zapata's death but that he intended to create that risk anyway. Accordingly, we conclude that the prosecutor provided sufficient evidence of [Petitioner's] intent to commit felony murder under an aiding and abetting theory.

*Miller*, 2015 WL 558001 at \*2.

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of

credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

*Jackson* is the standard applied by the Michigan Court of Appeals.  The court of Appeals cited *People v. Ericksen*, 793 N.W.2d 120 (Mich. Ct. App. 2010), for the sufficiency standard.  The *Ericksen* court, in turn, relied on *People v. Hawkins*, 628 N.W.2d 105 (Mich. Ct. App. 2001), and *Hawkins* relied on *People v. Petrella*, 380

N.W.2d 11 (Mich. 1985). Finally, *Petrella* references *People v. Hampton*, 285 N.W.2d 284 (Mich. 1979), and *Hampton* cites *Jackson* as the source of the standard. Thus, it cannot be said that the standard applied by the court of appeals was contrary to clearly established federal law.

Petitioner accurately notes that there was insufficient evidence of premeditation or planning of the murder and there was certainly no evidence that Petitioner wielded the knife. But, those are not the only ways to prove murder in Michigan. The Michigan Court of Appeals identified the elements necessary to prove felony murder and then recounted the sufficient evidence introduced with respect to each element. The court's findings are reasonable on the record.

Petitioner's challenge does not directly address the state court's findings. Petitioner has certainly failed to demonstrate that the state court's determinations are contrary to or an unreasonable application of *Jackson*. Moreover, he has failed to demonstrate that the state court's factual determinations are unreasonable on the record. Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Accordingly, I recommend that a certificate of appealability should be denied.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated: June 23, 2017 /s/ Phillip J. Green
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).